for the day. Doermer versus Callen. Morning, Mr Rizzi. Morning, Your Honor. My first time seeing you on that side of the bench. It's been a while. It has been a while. But it's good seeing you again. I'm going to, if I may, I'm going to presume this is a hot court and a jurez debrief so I'm not going to go through the facts unless you want me to. That's a good assumption. There is one underlying issue in this case that is dispositive, really, of the whole case. And that issue is whether or not a fiduciary may vote for their own self-interest and vote for their own appointment on the board of directors. That's what happened in this case. The question is whether a board of directors, a director can vote for her own election? Yes. That happens all the time. You're saying that's illegal under Indiana law? If they're a fiduciary. All directors are fiduciaries, right? Beg your pardon? All directors are fiduciaries. Yes. Directors of for-profit and not-for-profit corporations vote on their re-elections all the time. Here, where you have, here's Phyllis Albert's term had expired, and they put her, and under the statute it says that despite the fact that a director's term has expired, they may serve as a director until their successor is appointed and qualified. Okay. This case goes beyond that because then what happened is Callan, Catherine Callan, put to the board of directors as to whether or not she should be reappointed or appointed to see her own director. And Dick Dormer, Richard Dormer voted no. Kathy Dormer voted yes. And she voted, so she voted for her own self as to whether or not she should be reappointed again. But she was lawfully sworn. For her own self-interest. So what? Yeah, both the statute and the bylaw provided that the director keeps serving until a successor is elected. Yeah, but they put it to a vote here. Was this argument in your brief? Yes. That she could not vote? That she could not vote for herself. Because it was herself or because her term had expired? Because it was her, well, both. I saw the argument that she couldn't vote because her term had expired. I've never heard the argument. Maybe I missed it? Yeah, it says that she couldn't vote for herself. It's in the briefs. Well, why not? Because her term had expired or simply because it's herself? Could Mr. Dormer vote to reelect himself? I beg your pardon? Could Mr. Dormer vote to reelect himself? Yeah, but this is when her term had expired. In fact, her term has already expired. Okay, so we're back to the expired point that's actually in your briefs. Yes. Right? Okay. Her term has expired. So the question is whether or not when Kathy Callan put it to a vote as to whether or not she should remain on the board, she decided, Phyllis Alberts decided the deciding vote, yes, for herself. If she's a fiduciary duty, she can't vote her own self-interest. What in Indiana law prohibits a director from, in this sort of a corporation, from voting on the director's own re-election? Common law says that a fiduciary cannot vote for their own self-interest. Where? That's what happened in this case. What common law in Indiana tells us that? Or statute? Or Bible? Well, how about if I give you a case, a U.S. Supreme Court case? Pepper, P-E-P-P-E-R versus Litton, L-I-T-T-O-N 308 U.S. 295. A director of a corporation is a fiduciary. He who is a fiduciary cannot serve himself first. That's the sort of general statement that's very familiar to all of us. But this is a more specific question about corporate governance because your position seems to be that if you've got three directors in a corporation, and three is the minimum here, right? You have to have at least a minimum, yes. And if the one is disqualified from voting, then you reach deadlock, right? I didn't hear the last part. You reach deadlock. Here what happened is that Phyllis Alberts, when she voted for herself to extend her term on the board, that's voting for her own self-interest. And she's a fiduciary. In my opinion, she can't do that, Judge. Okay. Is that argument in your brief? Yes. We talk about she cannot vote for herself. Because it's herself. Where is that in your brief? I don't have my brief here in front of me. But I do recall in the brief we talk about she cannot vote for herself. You made that argument because her term had expired and she was into the holdover mode. We have the statutes. We have the bylaws. I didn't see anything in here about a director being unable to vote on her own reelection. But why don't you move on to something else? Okay. Well, because she breached, in my opinion, Your Honor, and it may be wrong, but it's my opinion, that when a director on the board of directors' term is expired, and then it's actually put to a vote as to whether or not she should be retained on the board, that director cannot vote for herself or self-interest herself if she's the deciding vote. When you look at the Indiana Code, though, it's so clear. It says, despite the expiration of a director's term, the director continues to serve until a successor is elected, designated, or appointed and qualified. And there's no caveat that if you continue, that if you have to vote on anything, and if it has to do with your continued presence on the board, that you're excluded. Because in this case, Your Honor, the facts go beyond that statute. The facts are that after her term was expired, she remained as a director for seven months. Right. Nothing was done. And nothing's wrong with that, according to the Indiana Code. Nothing's wrong with that. Let's assume nothing's wrong with that. But what happened is Kathy Callan put it to a vote, and she called for a vote as to whether or not she should be retained, she should be re-elected on the board. When she does that, the person who's supposed to be re-elected, she's a fiduciary because she's a director. She can't vote for herself because she's the deciding vote. Richard Dorff voted no. Sir, we're back to the argument that you're raising for the first time on appeal here. Let me ask you, one of the issues in this case is whether the plaintiff, Mr. Dormer, can pursue a derivative action, right? Yes. Because he's not a member of the corporation, you want us to treat him as if he were, on the theory that you couldn't possibly have a corporation that would not allow derivative actions, right? Well, the defendants and the district court relied upon statutes that says that in bringing a derivative action, shareholders or members may bring it, okay? And Mr. Dormer is neither one, correct? Yeah, okay. It doesn't say directors, okay? But in this case, the Indiana statute, later after a case came down that the district court relied upon, said that non-profit corporations did not have to have members. Right. So this corporation does not have any members. It doesn't have any shareholders, it doesn't have any members. So if the board of directors commits some wrongdoing under the defendant's theory, there'd be a wrong but no remedy because nobody could bring the derivative action. Well, actually, there are some other remedies under Indiana law, but I guess my question is whether you think that's a bug or a feature in the way the statutes are set up. Since the not-for-profit corporation, when it was rewritten, creates this option of a corporation without members, so that somebody who's setting up a family foundation like this can prevent directors from bringing derivative actions by opting for the no members option under the statute. Or there are two cases that I'd like to call Your Honor's attention to. One is Dottlich, D-O-T-L-I-C-H, versus Dottlich, and that's in the brief, 475 Northeast 2nd, 331. In that case, it's a for-profit corporation, and the plaintiff bringing the suit was a shareholder and a director. And the defendants took the position in the case that a director could not bring a derivative action in Indiana. Right, but Dottlich, if I could just interrupt, because I think I know where you're going. That case simply just says that if you're a director, that doesn't disable you from bringing a derivative suit, so long as you're also a shareholder. It doesn't say so long as you're also a shareholder. The court says that there is nothing under Indiana law that prevents a director from bringing a derivative suit. That's what it says. Who is also a shareholder. Beg your pardon? Who is also a shareholder. In the case, he happened to be a shareholder, but that's not what the court said. The court didn't say who is also a shareholder. It was specifically on the issue of whether or not a director may bring a derivative action. That's what it says. That's what was presented to the court. And the court said that just because there's no statute that allows a director to bring a derivative action, that does not preclude a director from bringing a derivative action. That's what the court said. Mr. Rizzi, are you familiar with the recodification of Indiana's corporation laws in the late 1980s, which was designed in many ways, both for for-profit and not-for-profit corporations, to narrow remedies and litigation involving matters of corporate governance? So I guess that's why I asked my question about whether this absence of members and the absence of somebody to bring a derivative action here is a bug or a feature of this design. I don't know how to get under the categories of bug or feature, Your Honor, to be honest with you. Whether it's a mistake or whether it was the intended result of the statutory amendment? I don't want to call it a mistake, but it was just simply not addressed. I don't want to call it a mistake, but it was simply not addressed. Well, maybe I can get at it. The other case says the same thing. In the Dottledge case, the other case is Kirtley, K-I-R-T-L-E-Y. That's also in the briefs. Mr. Rizzi, if I could just interrupt for a moment, and maybe this will clarify your position on this. Would it be reasonable for the Indiana State Legislature to conclude that, on balance, non-profit corporations, they run on the up-and-up, and that to allow derivative suits by directors is more cost than it's worth? And so, as Judge Hamilton, I think, was trying to ask, then it's reasonable for the Indiana Legislature to then eliminate derivative suits by directors. Well, if that's true, then it's contrary to the Dottledge case and what the Court said in the Kirtley case, because those two courts addressed that question, and they said just because the statute doesn't provide for it doesn't mean it precludes it. That's what the Court said in the two cases. So you're into your rebuttal time if you want to save some time. You can continue if you'd like, but you asked to save five minutes. All right, then I'll go. And now you've got a minute. I'll save five minutes. Okay. All right. Thank you very much. Thank you. Mr. Paul. Good morning. May it please the Court, allow me to start where Mr. Rizzi left off, which is with derivative standing. I think this Court is aware that no Indiana appellate court has ever indicated that a director may bring a derivative action. In fact, all of the evidence is to the contrary. The Indiana Supreme Court in GNN Aircraft and the Indiana Court of Appeals in Brenner both said that being a member or a shareholder of a corporation is a requirement, their word, to bring a derivative action. And in fact, in an older case called Wright v. Floyd, which is quoted in Kirtley, which is the case that extended derivative standing to the nonprofit context, that case strongly indicates that being a director alone is just not enough to confer standing to bring a derivative action. Now, some states have extended derivative standing to directors in the nonprofit context. North Carolina, for example, as has the revised Model Nonprofit Corporations Act, but Indiana hasn't gone down that road. What Indiana has done has been to provide a very limited remedy for directors to sue, and that's contained in Indiana Code 23-1744. And it says that directors can bring either a declaratory judgment action or an injunction action to challenge a corporation's power to act when third parties haven't acquired rights. Now, the mere existence of that statute implies that the General Assembly did not intend to confer broader remedies, such as a derivative action, to pursue broader remedies, such as damages, as opposed to declaratory or injunctive relief. Even if we get past all of that, though, and assume that directors can bring a derivative action, there's the problem here of demand. Mr. Dormer failed to make a demand on the board prior to filing suit, and he's not excused from having done so. To excuse demand under Indiana law, and the relevant case here is ITT, there has to be a particularized shown that there's reasonable doubt that a majority of the board of directors could exercise disinterested business judgment in responding to the demand. And to be interested for purposes of demand futility requires more than a mere threat of personal liability. There has to be a substantial likelihood of personal liability, and to establish that, we have to go to the General Statute on Liability for Directors, which is Indiana Code 23-17-13-1. And it says, for a director to be liable, the director has to have failed to exercise her business judgment in good faith, failed to act as an ordinarily prudent person would under like circumstances, and failed to act in a way that she reasonably believed was in the best interest of the corporation, and all of those failures have to amount to willful misconduct or recklessness. And Richard simply hasn't alleged facts, as is his obligation to establish demand futility on any of those points here. And if I could, allow me to focus in particular on Catherine's liability, his sister, because Richard seems to focus on her. And he claims that she should be held liable for voting to make distributions to the University of St. Francis, because she's a board member on the university. Well, there's a statute, again, that governs this situation. It's Indiana Code 23-17-13-4, and it governs personal liability of directors for making wrongful distributions, and it requires a couple of showings. One showing is that the distribution has to be wrongful in a sense that it violates the nonprofit code or the articles. And secondly, the breach has to be, again, amount to willful misconduct or recklessness. And again, Mr. Adormer simply hasn't alleged facts to establish either of those conditions. There's nothing in the bylaws, the articles, or the code that precludes a board member from voting to make a distribution to an organization on whose board she sits. And second of all, and maybe just as important, the distribution to the university here was squarely within the foundation's mandate, as expressed in the Articles of Incorporation, which is to primarily benefit Fort Wayne area charitable organizations, educational, religious, and otherwise, and the University of St. Francis falls squarely within that. So that's derivative standing. Then there's the question of individual standing. And again, let's take the claims in pairings. His most serious claim, again, I think is against his sister Catherine for voting to make these distributions to the university, and the corollary claim is a claim of unjust enrichment, that the university has been unjustly enriched by these distributions. The problem that Richard faces here, however, is that the money he's after would go to the foundation. It is the foundation's money, after all, that was given to the university, and in fact, it's not his money. And so the only way he could recover that is on behalf of the university, and to do that he would have to bring, or be able to bring, a derivative action. And in fact, the statute, again, governing personal liability for directors for wrongful distribution, says liability runs, quote, to the corporation. Then the second pairing of claims is his claim that Catherine should be removed from the board and new directors appointed. But the removal statute, the statute allowing the removal of directors, says it can only be, a removal action can only be initiated either by the corporation or by 10% of a class of members who can vote for directors. And we know the corporation hasn't initiated a lawsuit here, and neither have 10% of the members. Because there are no members. Because there are no members. Now, Mr. Dormer says, well, members doesn't mean members in the context of the removal statute. I'm a director, so I'm part of a class that can vote for other directors, and there are a couple of problems with that. Number one, the term member is defined in the Act, and that definition applies throughout the Act, including to the removal statute. And secondly, the Nonprofit Act specifically contemplates, in the chapter dealing with members, that there can be multiple classes of members. So one class might be able to vote for directors. Other classes might not be able to. And so, really, what the removal statute is addressed to are the classes of members who can vote for directors. Mr. Paul, is it correct that the Indiana statutes provide, for the founder of such a not-for-profit corporation, the option as to whether to set up the corporation with members or not? Correct. And what goes into that consideration, to the exercise of that choice? I think it's entirely left up to the corporation's discretion. There is no criteria in the statute governing a corporation's decision on whether to include members or not. But one consideration, as you indicated earlier, Judge Hamilton, that the corporation might want to take into account, is that it might not want directors to bring derivative actions, because to do so, to allow directors to bring a derivative action, could theoretically cast a specter over all board debates, all disagreements among the board. There would be a pall over all board discussions. A director could always threaten to bring a derivative action if he's not getting his way. And the Indiana General Assembly might have thought that that is not conducive to good board relations and good corporate governance. But it's an option. It's certainly an option, absolutely. Let me ask you, if I could, about the statutory remedy that a director has under Section 4-4. If I understood your argument correctly in the brief, you're claiming that the other directors are third parties who have interests in being directors. And I, frankly, had some trouble with that notion. Well, let me address that directly, and then I'll address a related point. The directors are third parties in the sense that he is seeking to remove them from the board, and they are not taking part in that decision. They have acquired the right. They have been lawfully elected, according to the bylaws and the articles, to the board. But could one director challenge the lawfulness of another director's election under Section 4? Where third parties have not acquired rights. I see third parties here as being, for example, the University of St. Francis. But it's a little hard for me to see that statute reaching other officers or directors of the same corporation. It's a fair point. It's a fair point. Nonetheless. Maybe you don't get money back. You don't get money back, but it doesn't allow the statute that allows a director to bring a cause of action only allows the director to challenge the corporation's power to act, not the exercise of discretion of any individual director, nor does it allow a director to bring a removal action, as I indicated earlier. You either have to be the corporation or 10 percent of the members to bring a removal action. That statute is very circumscribed. The other thing I would say is that the bylaws and the code, as we were discussing with Mr. Rizzi earlier, very clearly contemplate that board members hold over past the expiration of their term. That's number one. Number two, they can serve consecutive or non-consecutive terms. Number three, the bylaws specifically say that a board member may be elected whose term, quote, has expired, and that's precisely what happened here. Phyllis's term expired. She continued to hold over, and then she was reelected, and there's nothing in the bylaws, the articles, or the code that prohibited that. Under that theory, then, by inaction, directors can serve indefinitely, right? Theoretically, there's no limitation in the statute, but here it was a relatively short period of time, seven months. Under your theory, Mr. Paul, could you, one of the arguments that's being made is, my gosh, we have these not-for-profit corporations. This is a relatively modest one, but, you know, billions, hundreds of billions of dollars are tied up in not-for-profit corporations. What happens, what terrible things might happen if we get renegade boards and so on? Under your theory, could you identify other mechanisms that are available to rein in the renegades? Of course. Number one, simply because there's no derivative action available doesn't preclude the corporation itself from suing when it's been wronged. Number two, again, the removal statute specifically says that a corporation may initiate an action to remove a rogue director. And number three, there's a statute, again, that I mentioned earlier, that allows directors to be held personally liable for making wrongful distributions, and there's nothing precluding a corporation from suing a director for perhaps proposing or voting for a distribution in which the facts were not fully disclosed. Here, I should mention that it was no secret that Catherine was a member of the university's board and Richard doesn't allege otherwise. And as I mentioned earlier, there's simply nothing that precluded her from voting to make the distributions to the university. Even if we get past standing, there is the problem of a failure to state a claim, and Richard's claims really rest on two premises. One is that the board was improperly constituted, and I think we've established that the code, the bylaws, and the resolution, for that matter, appointing Phyllis to the board, all make quite clear that the board was properly constituted. And the second premise of his claims is that the distributions to the university should be clawed back because the board was improperly constituted and because Catherine sits on the university's board. Again, the board was properly constituted, and no matter how you look at it, the distributions were valid here. If you look at it from the perspective of whether Catherine could be held personally liable for those distributions, we've gone through that analysis. And Richard has an alleged fax as to why she could be held liable for those distributions. If you look at the transaction and want to know whether the transaction itself is void because of this vote, you go to Indiana Code 23.17.13.2.5, which says that a distribution or a contribution of this sort is not void solely because a board member is on both sides of it. And in fact, that statute goes on to say that, affirmatively, that the transaction is not void if the transaction is fair to the corporation. And Richard has an alleged fax indicating in any way that the distribution was not fair to the corporation. Again, it fell squarely within the mandate of the foundation, and Catherine's membership on the university's board was disclosed. And finally, if all of that were not enough, there are two additional reasons for dismissing the unjust enrichment claim. One being that a gift is not the appropriate subject of an unjust enrichment claim. And secondly, unjust enrichment claims are not appropriate when there's a contract governing the relationship, and here there was a grant agreement governing the relationship. Before you sit down, can I just ask, because there was some reference to this derivative standing issue being a 12B1 subject matter jurisdiction issue. Is it really a subject matter jurisdiction issue? I thought about that, Judge Chang, and I think it is because it goes to whether Richard is the correct person to bring that action, whether he falls within the class of people entitled to bring a derivative action. And it seems to me that that does make it an Article III question. Likewise, I think his individual standing is an Article III question because he has not suffered an injury, in fact. Thank you, Your Honors. Thank you, Mr. Paul. You have one minute, Mr. Rizzi. The no-demand claim doesn't make any sense in this case, in my opinion, because Kathy and Phyllis are defendants in this case. They're the ones that were making a claim against them. So what do you make of the Indiana statute about the substantial risk of personal liability? Not just the fact that you're naming them as defendants being sufficient. Can you run that by me again, please? You may have heard Mr. Paul explain the Indiana statute that deals with when directors are deemed interested or disinterested, and the fact that you simply name someone as a defendant under the Indiana statutes is no longer sufficient to render them interested in the litigation. You have to show a substantial risk of personal liability. Personal liability by the plaintiff? Of the director who is acting upon the request for pursuing a derivative action. Yeah. There is a... In the Gottlich case, the court said that a director who... Three things. A director who... This is whether or not there's harm to Richard Dormer. That's the way I understand the question. Well, in the Gottlich case, the court said this. Three things. If a director on the board of directors participates in a misdeed, acquiesce, or does nothing, they themselves are personally liable. And what we're saying here, keeping Alberts on the board of directors with respect to his vote was improper. And if Mr. Dormer did nothing, he would be personally liable under the Gottlich case. Thank you, Mr. Rizzi. We'll take the case under advisement, thanks to both counsel.